APPEAL OF SCHINDLER, INC.

Docket No. 5856.	Decided July 22, 1926.

On the evidence, *held*, that the taxpayer was not a personal service corporation.

*David L. Ullman, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before GRAUPNER[1] and TRAMMELL.

This is an appeal from the determination of a deficiency in income and profits taxes for 1920 and 1921, in amounts of $1,461.73 and $141.08, respectively. The deficiencies arise from the denial by the

---

[1] This decision was prepared during Mr. Graupner's term of office.

Commissioner of personal service corporation classification to the taxpayer.

### FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal office in the City of New York. Its name prior to 1920 was Schindler National Detective Agency, which name was subsequently changed to Schindler, Inc. It was incorporated in 1912, taking over the business previously operated by Raymond C. Schindler, who became its president and continued as such until after expiration of the period involved in this appeal. Associated with him in the conduct of the business were his father, John F. Schindler, and his brother, Walter S. Schindler.

The authorized capital stock of the company was $30,000, consisting of 300 shares of the par value of $100 each. Of this amount, on January 1, 1920, 140 shares were outstanding as follows:

|  | Shares |
|---|---|
| Raymond C. Schindler, president | 72 |
| John F. Schindler | 10 |
| Walter S. Schindler | 35 |
| Raymond Schindler, trustee for Raymond Schindler, jr | 5 |
| James R. Gooding | 11 |
| William M. Adams | 2 |
| Nellie Schindler | 5 |

Of the above outstanding shares, 25 were issued for the good will of the business formerly conducted by Raymond C. Schindler, which was taken over by the corporation, and 25 shares were issued to the said Raymond C. Schindler pursuant to a resolution of the corporation on November 14, 1916, for services performed for the corporation. The other 90 shares represented cash capital of the corporation.

The only change in the stock holdings during the years 1920 and 1921 was the transfer by John F. Schindler of 9 shares held by him to his wife.

During the taxable years in question, Raymond C. Schindler and John F. Schindler devoted their entire time to the active conduct of the taxpayer's business. William M. Adams was bookkeeper of the corporation and devoted his entire time to the active conduct of its affairs. Nellie Schindler was the wife of Raymond C. Schindler and she, as well as Raymond Schindler, jr., his son, and Gooding were not actively connected with the conduct of the business.

The business of the taxpayer was that of conducting investigations for a selected list of clients, among whom were included many of the leading law firms of New York City. Some of the services rendered consisted in frustrating attempts at blackmail, in tracing lost persons, in secretly obtaining information for clients, and similar work, necessitating a great amount of skill and discretion. The

success of the business depended upon the confidence of the clients in the personal ability and integrity of the members of the Schindler family who actively carried on or supervised the operations intrusted to the corporation. On some occasions the taxpayer assisted the district attorney, and at times carried on investigations for foreign governments. During the years in question the taxpayer did no advertising and no canvassing. Its clients were obtained entirely through personal contacts established by the Schindler family and by the recommendation of other clients.

During the entire period the taxpayer was engaged in business, there was no service performed which was not personally planned and supervised, if not actually done, by either the father or his sons. In some cases the actual investigation was performed by them. In other cases the investigation was carried on in part by operatives employed by them under their supervision. Only one operative was constantly on the pay roll. Other operatives were employed on a per diem basis, at rates of six to fifteen dollars a day and expenses. These operatives performed the task of "shadowing," that is, of keeping the person as to whose movements information was desired under close observation. The average number of operatives employed by the taxpayer was about six or seven, though at times it ran as high as twenty.

The assets and liabilities of the taxpayer for the years 1920 and 1921 were as follows:

|  | Jan. 1, 1920. | Dec. 31, 1920. | Dec. 31, 1921. |
|---|---|---|---|
| ASSETS |  |  |  |
| Cash | $1, 286. 64 | $1, 964. 50 | $1, 320. 27 |
| Accounts receivable | 19, 346. 58 | 29, 713. 05 | 23, 096. 26 |
| Loans receivable | 2, 322. 81 | 3, 670. 89 | 3, 403. 92 |
| Liberty Loan bonds | 1, 600. 00 | 1, 642. 80 | 1, 642. 80 |
| Driggs stock | | | 440. 00 |
| Furniture and fixtures | 2, 156. 68 | 2, 415. 91 | 2, 259. 62 |
| Stationery | | 773. 37 | 246. 76 |
| Equipment | 385. 16 | | 292. 92 |
| Deferred charges | 1, 824. 15 | 1, 913. 29 | 2, 498. 93 |
| Total | 28, 922. 02 | 42, 093. 81 | 35, 200. 58 |
| LIABILITIES |  |  |  |
| Notes payable | 1, 350. 00 | 8, 900. 00 | 4, 400. 00 |
| Accounts payable | 2, 026. 30 | 6, 244. 72 | 5, 059. 68 |
| Reserve for bad debts | 1, 416. 95 | 1, 800. 00 | 2, 000. 00 |
| Capital | 14, 000. 00 | 14, 000. 00 | 14, 000. 00 |
| Surplus | 10, 128. 77 | 11, 149. 09 | 9, 740. 90 |
| Total | 28, 922. 02 | 42, 093. 81 | 35, 200. 58 |

During the year 1920, the gross income of the taxpayer was $188,-141.83, and during 1921, $167,898.43. The expenses and salaries of operatives in 1920 were $127,414.26, and in 1921 $114,268.81. These figures include traveling expenses in this country and Europe, maintenance of operatives in the field, and their salaries and bonuses.

50144°—27——24

None of the operatives were stockholders. During 1920 the taxpayer paid out $5,375.80, as commissions, to two persons who were employed to canvass lawyers and others for business, and for 1921, for the same purpose, the taxpayer paid out $6,361 as commissions on business brought in.

During the years involved in this appeal, Walter S. Schindler, who owned 35 shares of stock, was in bad health and traveled to some extent. He visited in Atlanta, Ga., and secured a position there. The taxpayer continued to pay him his salary and expense money.

The greater part of the work was done for clients of long standing. To these clients the taxpayer did not send any statement of amounts expended or services rendered until the work was completed. Large sums of money were expended for traveling expenses and, in order to meet these current expenses, the taxpayer made short-time loans from the bank, some of which were only for a period of a few days.

On December 15, 1919, the directors of the taxpayer passed the following resolution:

In consideration of the increased value of services of the officers of the corporation, we hereby authorize the increase of salaries as follows: R. C. Schindler from $6,000.00 to $9,000.00 and expense allowance of $250.00 per month; J. F. Schindler from $1,800.00 to $4,000.00, with expense allowance of $75.00 per month; W. S. Schindler from $2,400.00 to $5,000.00 with expense allowance of $100.00 per month. This increase to take effect as of January 1, 1919.

The total compensation provided for each officer by the above resolution was handled uniformly on the books as one salary account, and was checked out as such. Both the father and the two sons were very active socially; belonged to a number of clubs, and entertained extensively. This activity was for the purpose of establishing personal contacts by reason of which clients for the taxpayer might be obtained.

*Judgment for the Commissioner.*